**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| MARSHALL FEATURE RECOGNITION, LLC, ) ) | |
| Plaintiff, ) | Civil Action No. 14 CV 865 |
| v. ) ) ) | Judge Sharon Johnson Coleman |
| ) | Magistrate Daniel G. Martin |
| WENDY'S INTERNATIONAL, INC., ) ) | |
| Defendant. ) | |

**DEFENDANT WENDY'S INTERNATIONAL, INC.'S MEMORANDUM OF LAW IN
SUPPORT OF ITS MOTION TO DISMISS COMPLAINT PURSUANT TO
<u>FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)</u>**

**TABLE OF CONTENTS**

I. SUMMARY OF ARGUMENT ................................................................................ 1

II. LEGAL STANDARD ............................................................................................. 2

III. ARGUMENT ........................................................................................................... 2

    A.    Wendy's cannot directly infringe any claims in the '750 patent because all of the claims require an additional party to complete any alleged infringement. ................................................................................................... 2

        1.    Wendy's cannot directly infringe the system claims in the '750 patent because Wendy's does not make, use sell, offer for sale or import the required "feature recognition unit." ........................................... 3

        2.    Wendy's cannot directly infringe the method claims in the '750 patent because Wendy's does not make, use, sell, offer for sale or import the required step of "scanning said machine recognizable feature." ................................................................................................... 5

    B.    Wendy's cannot induce infringement of the method claims because under United States Supreme Court precedent, a direct infringer is required. ................. 6

    C.    All system claims in the '750 patent are invalid as indefinite under 35 U.S.C. §112(b) because the '750 patent does not disclose an algorithm for "recognizing said feature." ....................................................................................... 7

IV. CONCLUSION ...................................................................................................... 15

# **TABLE OF AUTHORITIES**

**Cases**                                                    **Page(s)**

*Akamai Techs., Inc. v. Limelight Networks, Inc.*,
    692 F.3d 1301 (Fed. Cir. 2012) (*en banc*), *cert. granted*, 134 S. Ct. 895 (2014) ......................6

*Allen Eng'g Corp. v. Bartell Indus., Inc.*,
    299 F.3d 1336 (Fed. Cir. 2002)..................................................................................................8

*Aristocrat Techs. Australia Pty Ltd. v. International Game Tech.*,
    521 F.3d 1328 (Fed. Cir. 2008)......................................................................................10, 14

*Aro Mfg. Co. v. Convertible Top Replacement Co.*,
    365 U.S. 336 (1961)................................................................................................1, 6, 7

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)...................................................................................................2

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007)...................................................................................................2

*Blackboard, Inc. v. Desire2Learn Inc.*,
    574 F.3d 1371 (Fed. Cir. 2009)......................................................................................10, 12

*Corning Glass Works v. Sumitomo Elec. U.S.A., Inc.*,
    868 F.2d 1251 (Fed. Cir. 1989)..................................................................................................3

*Default Proof Credit Card Sys., Inc. v. Home Depot U.S.A., Inc.*,
    412 F.3d 1291 (Fed. Cir. 2005)...............................................................................................8, 9

*Finisar Corp. v. DirecTV Group, Inc.*,
    523 F.3d 1323 (Fed. Cir. 2008)......................................................................................10, 13

*Function Media, L.L.C. v. Google Inc.*,
    708 F.3d 1310 (Fed. Cir. 2013)......................................................................................10, 11

*Glory Licensing, LLC v. Toys "R" Us, Inc.*,
    No. 09-cv-4252 (FSH), 2011 WL 1870591 (D.N.J. May 16, 2011)........................................7

*Ibormeith IP, LLC v. Mercedes-Benz USA, LLC*,
    732 F.3d 1376 (Fed. Cir. 2013)................................................................................................10

*McZeal v. Sprint Nextel Corp.*,
    501 F.3d 1354 (Fed. Cir. 2007)..................................................................................................2

*Select Controls v. Am. Elec. Components, Inc.*,
    No. 07-cv-1306 (DLC), 2008 WL 216612 (S.D.N.Y. Jan. 22, 2008) .......................................7

**Statutes**

35 U.S.C. §112 ............................................................................................................................1, 8

35 U.S.C. §112(b) ......................................................................................................... *passim*

35 U.S.C. §112(d) ............................................................................................................................4

35 U.S.C. §112(f) .......................................................................................................................8, 9

35 U.S.C. §271(a) ...................................................................................................................2, 6, 7

35 U.S.C. §271(b) .....................................................................................................................6, 7

**Other Authorities**

Federal Rule of Civil Procedure 8(a)(2) ...........................................................................................2

Federal Rule of Civil Procedure 12(b)(6) ............................................................................1, 2, 15

http://www.supremecourt.gov/qp/12-00786qp.pdf (last visited Apr. 2, 2014) ................................7

On February 7, 2014, without any prior contact or notice to Wendy's, Marshall Feature Recognition, LLC ("Plaintiff") filed its complaint alleging infringement of U.S. Patent No. 6,886,750 ("the '750 patent"),[1] one of 19 similar complaints filed by Plaintiff, mostly in the Eastern District of Texas. Plaintiff's complaint fails to identify even a single one of the 139 claims in the '750 patent that is allegedly infringed, leaving Wendy's to guess what patent claims are really involved. Unfortunately for Plaintiff, it does not matter which claim or claims it may try to rely on as it has failed to properly plead infringement as to *any* of the claims in the '750 patent. Plaintiff's infringement allegations are deficient because they necessarily depend on a third party, a user, rather than only on Wendy's, to try to establish infringement. Moreover, all of the "system" claims in the '750 patent are invalid on their face under 35 U.S.C. §112. Plaintiff's complaint should be dismissed with prejudice in its entirety.

I.  **SUMMARY OF ARGUMENT**

Plaintiff's complaint should be dismissed under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. Wendy's cannot possibly directly infringe the claims to a system in the '750 patent because a user, rather than Wendy's, is alleged to provide at least the "feature recognition unit" required by every system claim. Wendy's cannot possibly directly infringe the method claims in the '750 patent because a user, rather than Wendy's, is alleged to perform at least the step of "scanning said machine recognizable feature" required by every method claim. The lack of a single entity alleged to be a direct infringer also dooms Plaintiff's induced infringement theory under *Aro Mfg. Co. v. Convertible Top Replacement Co.*, 365 U.S. 336 (1961). Finally, all of the system claims of the '750 patent are facially invalid as indefinite under 35 U.S.C. §112(b) because the '750 patent fails to disclose

---

[1] A copy of the '750 patent was attached to Plaintiff's complaint and is referenced herein as D.I. 1-1.

supporting structure for the "means for recognizing said feature" that is recited in every system claim. Plaintiff's complaint should be dismissed with prejudice.

## II. LEGAL STANDARD

A Rule 12(b)(6) motion to dismiss for failure to state a claim is "a purely procedural question not pertaining to patent law" and therefore district courts are to apply the law of the regional circuit. *McZeal v. Sprint Nextel Corp.*, 501 F.3d 1354, 1355-56 (Fed. Cir. 2007). To state a complaint upon which relief can be granted, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint must be sufficient to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555. A complaint must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*.

## III. ARGUMENT

Plaintiff's complaint should be dismissed with prejudice under Rule 12(b)(6) for failure to state a claim upon which relief can be granted because the complaint does not allege, and cannot plausibly allege, that Wendy's meets all of the limitations of any claim in the '750 patent by itself, that Wendy's induces any direct infringement because there is no direct infringer and because all of the system claims in the '750 patent are invalid.

### A. Wendy's cannot directly infringe any claims in the '750 patent because all of the claims require an additional party to complete any alleged infringement.

It is axiomatic that to be liable for direct infringement, one must make, use, sell, offer for sale or import the claimed invention. 35 U.S.C. §271(a). The "claimed invention" means *all*

2

limitations of a patent claim. *Corning Glass Works v. Sumitomo Elec. U.S.A., Inc.*, 868 F.2d 1251, 1258 (Fed. Cir. 1989) (infringement determination requires analysis of "whether each of the limitations recited in the claim is present in the accused structure"). Here, Wendy's cannot be liable for direct infringement because it does not make, use, sell, offer for sale or import the "feature recognition unit" required by every system claim or the step of "scanning said machine recognizable feature" required by every method claim. Rather, if anyone provides such a "feature recognition unit" or performs "scanning said machine recognizable feature," it is a user, *not* Wendy's. As such, Wendy's cannot possibly be liable for direct infringement. Therefore, Plaintiff's direct infringement claim should be dismissed with prejudice.

> 1. Wendy's cannot directly infringe the system claims in the '750 patent because Wendy's does not make, use sell, offer for sale or import the required "feature recognition unit."

All of the system claims in the '750 patent recite as an element or limitation "a feature recognition unit." Claim 1 is the only independent system claim in the '750 patent. Claim 1 reads as follows:

> 1. A system for displaying programming to a user, the system comprising:
>
> a printed commercial document having at least one machine recognizable feature;
>
> *a feature recognition unit* having associated therewith a means for recognizing said feature and a means for transmitting a coded signal in response to the recognition of said feature;
>
> an intelligent controller having associated therewith a means for accessing said programming material in response to receiving said coded signal; and
>
> a display unit for presenting said programming material.

(D.I. 1-1, the '750 patent at col. 13, lines 8-19) (emphasis added.) All of the remaining system claims depend (directly or indirectly) from claim 1. A dependent claim incorporates all of the

3

limitations of the claim from which it depends. 35 U.S.C. §112(d) ("A claim in dependent form shall be construed to incorporate by reference all the limitations of the claim to which it refers.") Thus, all of the system claims (claims 1-125 and 132-135) in the '750 patent include the "feature recognition unit" limitation.

Plaintiff's complaint alleges that "QR codes are features that can be recognized by a mobile smartphone device when the device, controlled by the user, scans the QR code, in a manner claimed by the '750 patent. The mobile smartphone device uses a barcode scanner application to communicate with the QR code." (D.I. 1, Compl., ¶12.) Thus, it is the *user's* smartphone running a barcode scanner application (*i.e.*, software) that is alleged to be the "feature recognition unit" required for every system claim. Wendy's does not provide the user's smartphone or barcode scanner application.

Plaintiff does not allege, nor could it, that Wendy's makes, uses, sells, offers for sale, or imports, the user's smartphone and its barcode scanner application. As such, a necessary part of any potentially infringing system is missing—namely, the "feature recognition unit." Without providing the feature recognition unit, Wendy's cannot possibly be liable for direct infringement of any system claim in the '750 patent.[2] Therefore, Plaintiff's complaint should be dismissed with prejudice to the extent that it relies on Wendy's alleged direct infringement of any of system claims 1-125 and 132-135.

---

[2] Similarly, Wendy's does not provide the "display unit" recited in claim 1 and present in all of the system claims. Plaintiff's complaint alleges that "the content is displayed *on the screen of the mobile device*." (D.I. 1, Compl. ¶13) (emphasis added.)

4

      2.      Wendy's cannot directly infringe the method claims in the '750 patent because Wendy's does not make, use, sell, offer for sale or import the <u>required step of "scanning said machine recognizable feature."</u>

Plaintiff's complaint suffers from a similar fatal flaw with respect to the method claims in the '750 patent. The '750 patent includes two independent method claims: claim 126 and claim 129. Claim 126 reads as follows:

> 126. A method of providing a user access to programming material, comprising the steps of:
>
> printing a machine recognizable feature within a commercial document;
>
> *scanning said machine recognizable feature* of said commercial document; and
>
> transmitting data associated with said machine recognizable feature via a communication link to access said programming material, wherein said programming material is related to said commercial document.

(D.I. 1-1 at col. 17, lines 47-56) (emphasis added.) Claim 129 reads as follows:

> 129. A method of providing a user access to supplemental programming material associated with a commercial document, comprising the steps of:
>
> printing a machine recognizable feature within said commercial document, wherein said machine recognizable feature has associated therewith a command sequence for accessing programming material;
>
> *scanning said machine recognizable feature* within said commercial document and downloading data indicative of said machine recognizable feature via the Internet to a remote server;
>
> accessing programming material from said remote server; and
>
> transmitting said programming material to said user allowing said user to perceive said programming material in a humanly perceivable form, wherein said programming material is related to said commercial document.

(*Id*. at col. 18, lines 9-27) (emphasis added.) All of the method claims in the '750 patent depend (directly or indirectly) from either claim 126 or claim 129. Thus, all of the method claims (claims 126-131 and 136-139) in the '750 patent includes the step of "scanning said machine recognizable feature."

Plaintiff does not allege, nor could it, that Wendy's performs the step of "scanning said machine recognizable feature." Rather, Plaintiff alleges that the *user* performs this step: "QR codes are features that can be recognized by a mobile smartphone device when the device, ***controlled by the user***, scans the QR Code, in a manner claimed by the '750 patent." (D.I. 1, Compl., ¶12) (emphasis added.) Therefore, Plaintiff's complaint should be dismissed with prejudice to the extent that it relies on Wendy's alleged direct infringement of any of method claims 126-131 and 136-139.

**B. Wendy's cannot induce infringement of the method claims because under United States Supreme Court precedent, a direct infringer is required.**

The problems with Plaintiff's alleged direct infringement theory also spell doom for its induced infringement of the method claims theory. Plaintiff attempts to plead induced infringement under 35 U.S.C. §271(b) of only the method claims in paragraph 16 of its complaint. (D.I. 1, Compl. ¶16.) Wendy's cannot be liable for inducing infringement of the method claims if there is no direct infringement. *Aro Mfg. Co. v. Convertible Top Replacement Co.*, 365 U.S. 336, 341 (1961) (without direct infringement under 35 U.S.C. §271(a), there can be no indirect infringement). As has already been shown, no single entity makes, uses, sells, offers for sale or imports the methods recited by the method claims in the '750 patent. Thus, there is no direct infringement for Wendy's to possibly induce.

The Federal Circuit provided a wrinkle in this Supreme Court precedent in *Akamai Techs., Inc. v. Limelight Networks, Inc.*, 692 F.3d 1301 (Fed. Cir. 2012) (*en banc*), *cert. granted*,

6

134 S. Ct. 895 (2014). There, a fractured *en banc* court held, over a vigorous, four-judge dissent, that "all the steps of a claimed method must be performed in order to find induced infringement, but that it is not necessary to prove that all the steps were committed by a single entity." *Id*. at 1306. The dissent pointed out that the majority's position "is contrary to both the Patent Act and to the Supreme Court's longstanding precedent," including *Aro*. *Id*. at 1337 (Linn, J., dissenting). The United States Supreme Court has granted *certiorari*. The question presented is "Whether the Federal Circuit erred in holding that a defendant may be held liable for inducing patent infringement under 35 U.S.C. §271(b) even though no one has committed direct infringement under §271(a)." (*See* http://www.supremecourt.gov/qp/12-00786qp.pdf (last visited Apr. 2, 2014)). Argument is currently scheduled for April 30, 2014.

      **C.    All system claims in the '750 patent are invalid as indefinite under 35 U.S.C. §112(b) because the '750 patent does not disclose an algorithm for "recognizing said feature."**

All claims in the '750 patent that are drawn to a "system" (claims 1-125 and 132-135) are invalid as indefinite under 35 U.S.C. §112(b). As an initial matter, it is proper for a Court to invalidate the claims of a patent in the context of a motion to dismiss. *See e.g.*, *Glory Licensing, LLC v. Toys "R" Us, Inc.*, No. 09-cv-4252 (FSH), 2011 WL 1870591, at *4-5 (D.N.J. May 16, 2011) (invalidating all three asserted patents on motion to dismiss); *Select Controls v. Am. Elec. Components, Inc.*, No. 07-cv-1306 (DLC), 2008 WL 216612, at *5 (S.D.N.Y. Jan. 22, 2008) (invalidating patent and dismissing infringement claim).

Claim 1 of the '750 patent reads as follows:

> 1.    A system for displaying programming to a user, the system comprising:
>
> a printed commercial document having at least one machine recognizable feature;

7

> a feature recognition unit having associated therewith ***a means for recognizing said feature*** and a means for transmitting a coded signal in response to the recognition of said feature;
>
> an intelligent controller having associated therewith a means for accessing said programming material in response to receiving said coded signal; and
>
> a display unit for presenting said programming material.

(D.I. 1-1 at col. 13, lines 8-19) (emphasis added.) Claim 1 recites the limitation of "a means for recognizing said feature." A claim limitation that uses the word "means" "triggers a presumption that the inventor used this term advisedly to invoke the statutory mandate for means-plus-function clauses" under 35 U.S.C. §112(f).[3] *Allen Eng'g Corp. v. Bartell Indus., Inc.*, 299 F.3d 1336, 1347 (Fed. Cir. 2002). Here, the language following "means" (*i.e.*, "for recognizing a feature") is functional, leaving no doubt that this is a "means-plus-function" limitation. Means-plus-function limitations are permissible in some circumstances under 35 U.S.C. §112(f), which provides:

> An element in a claim for a combination may be expressed as a means or step for performing a specified function without the recital of structure, material, or acts in support thereof, and such claim shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof.

Thus, the "means for recognizing said feature" is permissible language in a patent claim, only so long as "corresponding structure" is described in the patent's specification. In addition, the patentee must have "clearly linked" any structure relied upon to the specific function in question. *Default Proof Credit Card Sys., Inc. v. Home Depot U.S.A., Inc.*, 412 F.3d 1291, 1298 (Fed. Cir.

---

[3] The subparts of Section 112 of Title 35 were renumbered and slightly reworded pursuant to the America Invents Act. The rewording does not affect the issues in this case. What is now referred to as Section 112(f) previously was referred to as Section 112, ¶6. Similarly, what is now referred to as Section 112(b) previously was referred to as Section 112, ¶2.

8

2005). "This duty to link or associate structure to function is the *quid pro quo* for the convenience of employing §112, ¶6." *Id*. A claim that includes a means-plus-function limitation that fails to comply with these safeguards is invalid as indefinite under 35 U.S.C. §112(b), which provides: "The specification shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the inventor or a joint inventor regards as the invention." The '750 patent does not "clearly link" any structure to the function of "recognizing said feature." This is a sufficient basis on its own to invalidate the system claims as indefinite under 35 U.S.C. §112(b).

Plaintiff nevertheless appears to contend that software is used to meet this limitation in its complaint. For example, Plaintiff alleges that:

> Defendant infringes '750 patent by providing QR Codes on printed commercial advertisements to be used by viewers for accessing programmed material. QR Codes are features that can be recognized by a mobile smartphone device when the device, controlled by the user, scans the QR Code, in a manner claimed by the '750 patent. The mobile smartphone device ***uses a barcode scanner application*** to communicate with the QR Code, featured within the Defendant's printed advertisement, to obtain programmed information relating to the advertisement.

(D.I. 1, Compl., ¶12) (emphasis added.) Further, in the '750 patent, to the extent relevant, where a digital camera is used to take a picture of an item of interest, the '750 patent states that "symbol processing *software*" is then used to interpret it. (D.I. 1-1, col. 9, lines 9-15) (emphasis added.)

Means-plus-function limitations that rely on microprocessors or computers to perform the recited function create additional requirements for the disclosed structure to comply with Section 112(f). In particular, as described in the cases below, it is not merely the general purpose microprocessor or computer that is the corresponding structure, but rather the microprocessor or computer as programmed by an algorithm to perform the specified function.

9

Numerous cases have invalidated patent claims for the exact reason that the system claims of the '750 patent should be invalidated—the claims include a means-plus-function limitation based on a computer or microprocessor, but the patent specification fails to adequately disclose an algorithm for accomplishing the recited function. *See, e.g.*, *Ibormeith IP, LLC v. Mercedes-Benz USA, LLC*, 732 F.3d 1376 (Fed. Cir. 2013) (affirming summary judgment of invalidity of patent claims that were indefinite under 35 U.S.C. §112(b) because specification failed to sufficiently disclose an algorithm for performing recited function); *Function Media, L.L.C. v. Google Inc.*, 708 F.3d 1310 (Fed. Cir. 2013) (same); *Blackboard, Inc. v. Desire2Learn Inc.*, 574 F.3d 1371 (Fed. Cir. 2009) (same); *Finisar Corp. v. DirecTV Group, Inc.*, 523 F.3d 1323 (Fed. Cir. 2008) (same); *Aristocrat Techs. Australia Pty Ltd. v. International Game Tech.*, 521 F.3d 1328 (Fed. Cir. 2008) (same). A review of these cases, many of which involved far more disclosure of an algorithm than contained in the '750 patent, is particularly instructive to illustrate the deficiency in the '750 patent.

In *Ibormeith*, the claims recited means-plus-function limitations that were to weigh particular factors in determining driver sleepiness. 732 F.3d at 1377-78. As the Federal Circuit noted:

> To comply with section 112(f), the specification of Ibormeith's patent has to disclose a structure for performing the functions claimed in the "computational means" limitation, the statute providing that the claim limitation covers that disclosed structure and its equivalents. If there is no such structure, the claim limitation is indefinite, *i.e.*, fails to "particularly point[] out and distinctly claim[]" the invention, because there is insufficient definition of something that, by virtue of section 112(f), is incorporated into the claim.

10

*Id*. at 1378. The structure required "must be an algorithm—a sequence of computational steps to follow—that must be found in the specification." *Id*. at 1379. "[W]hether there is adequate disclosure is a question of law." *Id*.

> Section 112(f) allows patentees to put structural details into the specification and build into the literal coverage of the claim a certain scope for equivalents in performing a defined function. The price of using this form of claim, however, is that the claim be tied to a structure defined with sufficient particularity in the specification.

*Id*. (internal citation omitted). The Federal Circuit reviewed Table 10 entitled "Sleep Propensity Algorithm—Definition," as well as 23 other tables and various figures in the patent to analyze the sufficiency of the disclosure of the algorithm. *Id*. at 1379-80. The Federal Circuit concluded that "[a] description of an algorithm that places no limitations on how values are calculated, combined, or weighted is insufficient to make the bounds of the claim understandable." *Id*. at 1382. Therefore, the Federal Circuit affirmed the district court's judgment that the claims reciting the "computational means" limitations (and their dependent claims) were invalid as indefinite. As in *Ibormeith*, here the '750 patent specification fails to disclose "a sequence of computational steps to follow" in order to perform the function of "recognizing the feature."

In *Function Media*, the sole independent claim included a "means for transmitting" limitation. 708 F.3d at 1316. In analyzing the sufficiency of the disclosed structure, the Federal Circuit noted that:

> It is well settled that "[s]imply disclosing software, however, 'without providing some detail about the means to accomplish the function[,] is not enough.'" *Noah Sys., Inc. v. Intuit, Inc.*, 675 F.3d 1302, 1312 (Fed. Cir. 2012) (quoting *Finisar*, 523 F.3d at 1340-41). When dealing with a "special purpose computer-implemented means-plus-function limitation," we require the specification to disclose the algorithm for performing the function. The "specification can express the algorithm in any understandable terms including as a mathematical formula, in prose, or as a flow

11

> chart, or in any other manner that provides sufficient structure." *Id*. Importantly, we have said that "[w]hile it is true that the patentee need not disclose details of structures well known in the art, . . . the specification must nonetheless disclose *some* structure."

*Id*. at 1318. Although the patentee pointed to numerous references in the text of the specification and to various flow charts in the specification, the Federal Circuit concluded this was not enough, finding "there is no specific algorithm disclosed in the prose, as a mathematical formula, in flow charts, or otherwise." *Id*. The patentee could only point to disclosure stating, in essence, that a computer program performs the recited function. Nor could the gap be filled by arguing that one of ordinary skill in the art would know how to create such software. "It is well established that proving that a person of ordinary skill *could* devise some method to perform the function is not the proper inquiry as to definiteness—that inquiry goes to enablement." *Id*. at 1319 (emphasis original). "Section 112, paragraph 6, is intended to prevent such pure functional claiming." *Id*. Therefore, the Federal Circuit affirmed the district court's judgment that the claim was invalid for indefiniteness. Even if credit is granted for the reference to "software" in conjunction with the digital camera in the '750 patent, as in *Future Media*, such reference "is not enough." The '750 patent does not describe an algorithm in a mathematical formula, in prose, as a flow chart or in any other manner.

In *Blackboard*, claim 1 (and dependent claims 2-35) included a means-plus-function limitation reading "means for assigning a level of access to and control of each data file based on a user of the system's predetermined role in a course." 574 F.3d at 1382. The patentee argued that the corresponding "structure that performs that recited function is the server computer's software feature known as the 'access control manager' or 'ACM.'" *Id*. The specification described the ACM:

> Access control manager 151 creates an access control list (ACL) for one or more subsystems in response to a request from a subsystem to have its resources protected through adherence to an ACL. Education support system 100 provides multiple levels of access restrictions to enable different types of users to effectively interact with the system (e.g. access web pages, upload or download files, view grade information) while preserving confidentiality of information.

*Id*. The Federal Circuit was not impressed:

> But that is not a description of structure; what the patent calls the "access control manager" is simply an abstraction that describes the function of controlling access to course materials, which is performed by some undefined component of the system. The ACM is essentially a black box that performs a recited function. But how it does so is left undisclosed.

*Id*. at 1383. Therefore, the Federal Circuit affirmed the district court's judgment that claims 1-35 were invalid as indefinite. Like in *Blackboard*, the '750 patent discloses nothing more than a "black box" that magically performs the function of "recognizing the feature."

In *Finisar*, the claims included the means-plus-function limitation "database editing means . . . for generating . . . and for embedding." 523 F.3d at 1340. The Federal Circuit observed that the patent "discloses very little about the purported structure corresponding to this claim term." *Id*. The sparse disclosure in the specification provides "nothing more than a restatement of the function, as recited in the claim" and provides "no algorithm or description of structure corresponding to the claimed function." *Id*. "Simply reciting 'software' without providing some detail about the means to accomplish the function is not enough." *Id*. at 1340-41. Therefore, the Federal Circuit affirmed the district court's judgment that the claims were invalid for indefiniteness. Once again, viewed charitably, the '750 patent at most makes a vague, unlinked reference to "software." This is not enough.

13

Finally, in *Aristocrat*, independent claim 1 (and its dependent claims) recited a "game control means" that performed three recited functions. 521 F.3d at 1331. The Federal Circuit explained:

> In cases involving a computer-implemented invention in which the inventor has invoked means-plus-function claiming, this court has consistently required that the structure disclosed in the specification be more than simply a general purpose computer or microprocessor. The point of the requirement that the patentee disclose particular structure in the specification and that the scope of the patent claims be limited to that structure and its equivalents is to avoid pure functional claiming. As this court explained in *Medical Instrumentation & Diagnostics Corp. v. Elekta AB*, 344 F.3d 1205, 1211 (Fed. Cir. 2003), "If the specification is not clear as to the structure that the patentee intends to correspond to the claimed function, then the patentee has not paid the price but is attempting to claim in functional terms unbounded by any reference to structure in the specification." *See also Biomedino, LLC v. Waters Techs. Corp.*, 490 F.3d 946, 948 (Fed. Cir. 2007) ("[I]n return for generic claiming ability, the applicant must indicate in the specification what structure constitutes the means."). For a patentee to claim a means for performing a particular function and then to disclose only a general purpose computer as the structure designed to perform that function amounts to pure functional claiming. Because general purpose computers can be programmed to perform very different tasks in very different ways, simply disclosing a computer as the structure designated to perform a particular function does not limit the scope of the claim to 'the corresponding structure, material, or acts' that perform the function, as required by section 112 paragraph 6.

*Id*. at 1333. The Federal Circuit's review of the patent specification found that "the description of the embodiments is simply a description of the outcome of the claimed functions, not a description of the structure, i.e., the computer programmed to execute a particular algorithm." *Id*. at 1334-35. Therefore, the Federal Circuit affirmed the judgment of the district court that all of the claims of the patent were invalid for indefiniteness. The '750 patent is similarly deficient, disclosing only that the feature is recognized, without disclosing an algorithm to make that happen.

14

In sum, the '750 patent utterly fails to disclose an algorithm that a microprocessor or computer (or smartphone) can be programmed to use in order to accomplish the recited function of "recognizing the feature." As such, all of the system claims (claims 1-125 and 132-135) are invalid as indefinite under 35 U.S.C. §112(b).

**IV.    CONCLUSION**

For the foregoing reasons, Plaintiff's complaint should be dismissed with prejudice in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.

Dated:  April 2, 2014

Respectfully submitted,

/s/Mark K. Suri
Mark K. Suri (6199636)
Patrick L. Patras (6210929)
**HINSHAW & CULBERTSON LLP**
222 North LaSalle Street, Suite 300
Chicago, Illinois 60601
Tel:  (312) 704-3000
Fax:  (312) 704-3001

Attorneys for Defendant Wendy's International, Inc.

15

## **CERTIFICATE OF SERVICE**

      I, the undersigned attorney, certify that a true and correct copy of the foregoing document was filed on April 2, 2014 with the Clerk of the Court using the CM/ECF system which will send notification of such filing(s) to the following:

Justin Kaplan  
Parikh Law Group  
150 S. Wacker Drive, Suite 2600  
Chicago, IL 60606  
(312) 725-3476  
*Counsel for Plaintiff*

                                                                     s/Mark K. Suri  
                                                                       Mark K. Suri

130781687v1 0956319